Lenk, J.
Plaintiff United Pacific Insurance Company (“UPIC”) brought this breach of contract and indemnification action against defendants Caruso Development Company, Inc. (“CDCI”), Raymond D. Caruso, Joan M. Caruso, Robert P. O’Connor, and Grace M. O’Connor, to recover for losses incurred when CDCI allegedly failed to complete a construction project.
This court heard oral argument on plaintiffs motion for summary judgment against all of the defendants on March 1, 1994.[2] In support of its motion, plaintiff argues that defendants do not dispute that they signed the indemnity agreement. UPIC also maintains that it had a right to settle the claims arising out of the failure to complete the project, and that it is entitled to indemnification as a matter of law.
In response, defendants Raymond Caruso, Joan Caruso, and CDCI contend that UPIC did not act in good faith when it settled the claims against CDCI because UPIC was on notice that defendants contested the claims. After examining the applicable law, reviewing the parties’ pleadings, and hearing the parties’ arguments, this court allows plaintiffs motion for summary judgment.
BACKGROUND
The parties do not dispute the following facts. In January 1987, defendant CDCI contracted with the Town of Epping, New Hampshire (“the Town”) for the development of Governor’s Green Condominiums. UPIC issued a subdivision bond in connection with the project, naming CDCI as the principal, the Town as the obligee, and UPIC as the surety. UPIC required the defendants to execute a Continuing Agreement of Indemnity-Contractor’s Form, in which they agreed:
SECOND: To indemnify, and keep indemnified, and hold and save harmless the Surely against all demands, claims, loss, costs, damages, expenses and attorneys’ fees whatever, and any and all liability therefor, sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond ... or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety . . . shall be payable upon demand.
The Indemnity Agreement also contained a provision under which the indemnitors could dispute claims presented to the Surety.
SEVENTH: That if Surety shall be required or shall deem it necessary to set up a reserve in any amount to cover any claim, demand, liability, expense, suit, order, judgment or adjudication under or on any Bond or Bonds or for any other reason whatsoever, to immediately upon demand deposit with Surety an amount of money sufficient to cover such reserve and any increase thereof, such funds to be held by Surety as collateral... and the Undersigned, in the event of their failure to comply with such demand, hereby authorize and empower any attorney ... to appear for them . . . and to confess judgment against them ... for any sum or sums of money up to the amount of any or all Bond or Bonds . . . Demand shall be sufficient if sent by registered or certified mail to the Undersigned . . .
On September 27, 1991, the Town notified CDCI and UPIC that the Town’s Planning Board had decided that CDCI had not fulfilled its obligations and that CDCI was in default. On November 13, 1991, April 13, 1992, and April 23, 1992, Raymond Caruso, the president of CDCI, informed UPIC in writing that CDCI contested the Town’s determination and that it wished to defend any claims brought by the Town.
The Town requested redemption of the bond from UPIC on March 23, 1992. On April 16, 1992, UPIC notified defendants that it had become necessary to set up a reserve, and that CDCI and the individual indemnitors would have to deposit $16,000 to cover such reserves. Defendants did not do so.
In October 1992, UPIC paid $16,000 to the Town under the terms of the bond. UPIC did not attempt to dispute liability, having requested and failed to receive from CDCI the collateral necessary to establish a reserve. The Town then released UPIC from further liability. Despite demand for indemnification, defendants have refused to reimburse UPIC.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “A complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
In the present action, CDCI disputes liability on the grounds that UPIC settled the claims against it in bad faith. In order to raise an issue of bad faith by a surety in settling an obligee’s claims against a principal, the principal must show “more than bad judgment, negli *144 gence or insufficient zeal.” Hartford Acc. & Indem. Co. v. Millis Roofing & Sheet Metal, Inc., 11 Mass.App.Ct. 998, 999 (1981). “Want of good faith... carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.” Id. at 999-1000; see American Employer's Ins. Co. v. Horton, 35 Mass.App.Ct. 921, 921 (1993).
In Hartford, the court relied upon the broad language of the indemnity agreement, which intended “to provide comprehensive reimbursement to the bonding company of money expended by it in connection with claims” against the principal and which stated that proof of payment to the obligee was prima facie evidence of the indemnitor’s liability to the surety. Hartford, 11 Mass.App.Ct. at 999. The bonding company also supplied the court with evidence of the principal’s deficient work, which the principal only controverted with statements that it believed the bonding company had not adequately investigated or defended the claim. Id. The court held that the principal had not raised a genuine issue of material fact with regard to the good faith of the bonding company, and therefore upheld the principal’s liabiliiy under the bond.
In the case at bar, defendants contend that UPIC received the correspondence which set forth CDCI’s dispute with the Town, but did not investigate defendants’ claims. Defendants argue that UPIC acted in bad faith when it paid monies in settlement of the claims, despite being on notice of defendants’ position. Defendants fail to raise a genuine issue of material fact with regard to UPIC’s conduct in settling the Town’s claims against CDCI. Raymond Caruso’s mere statements of belief that UPIC acted in bad faith are plainly insufficient to raise bad faith as an issue of material fact genuinely in dispute and will not defeat summary judgment. Id. It is clear that defendants did not comply with the terms of the bond, which required them to post collateral before UPIC would undertake a defense of the case. UPIC therefore did not breach a duty to investigate or defend, nor, indeed, is there any proof offered that UPIC was even negligent or acted with insufficient zeal. Id. at 999-1000. On the contrary, UPIC has submitted ample evidence that it complied fully with the bond’s provisions. Given that defendants have presented inadequate proof that UPIC acted in bad faith, plaintiff is entitled to judgment as a matter of law.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs motion for summary judgment against all defendants is ALLOWED.

 Despite the fact that defendants Robert P. O’Connor and Grace M. O’Connor were defaulted pursuant to Standing Order 1-88, this court treats the motion for summary judgment as a motion against all of the defendants to prevent the delay of final judgment against all parties, should the O’Connors seek to remove the default. Mr. O’Connor was present at oral argument on this motion.